HENRY M. PRENTISS and others,

*vs.*

DANIEL F. DAVIS and others.

Aroostook.    Opinion April 9, 1891.

*Plantations,—their organization.   Record.   Evidence.   Presumptions.   Stat. 1840, c. 89.*

The contents of a lost record of the organization of a plantation organized for election purposes may be proved by parol evidence.

Where such an organization was created nearly fifty years ago; and the principal steps taken for that purpose are testified to by one who participated

in the proceedings; and his recollection of the event is fortified by a certificate of organization, sent at the time to the Secretary of State, as required by law; and the plantation continued under such organization for upwards of fifteen years, raising money annually for plantation purposes, and voting at all presidential and state elections during that period; having been all the time recognized by the legislature and state officials in different ways as an existing plantation; and the missing proof is only as to the details of a posted notice calling the inhabitants together to effect a proposed organization,—the presumption is that the proceedings of organization were sufficiently complete to accomplish the purpose intended.

Under the statute authorizing "the qualified electors of unincorporated places to organize themselves into plantations for election purposes," it was allowable for two adjoining townships to be organized together into one plantation, the State having affirmed the propriety of the act by its recognition of numerous plantations organized under similar circumstances.

The organization was valid, even if it may be inferred from the return made to the Secretary of State that the form of the proceeding was to incorporate the inhabitants of the two townships into a plantation, making no special mention of the territorial limits included therein. The implication was unmistakable.

On report.

The facts are stated in the opinion.

*Wilson and Woodard*, for plaintiffs.

Copy of land-agent's records admissible by R. S., c. 82, § 102, as a conveyance of an interest in real estate, and being more than a license or parol sale. *White* v. *Foster*, 102 Mass. 375, 379. Similar conveyances appear in *Plantation* v. *Bean*, 40 Maine, 218, and *State* v. *Shaw*, 64 *Id.* 263. It is an estate of inheritance and an interest in the soil that was conveyed. *Clapp* v. *Draper*, 4 Mass. 266; *White* v. *Foster*, *supra*; *Putnam* v. *Tuttle*, 10 Gray, 48; *Howard* v. *Lincoln*, 14 Maine, 122; *Goodwin* v. *Hubbard*, 47 *Id.* 595.

Deed not defeated by the organizing of a plantation, whose limits were not defined. *Plantation* v. *Bean*, *supra*. The records give only a *descriptio personarum*, and show that the inhabitants of two townships were, contrary to the statute, organized into one plantation, (Stat. 1840, c. 89,) and under proceedings void for several reasons.

Deed not defeated by second organization of plantation under R. S., 1883, c. 3. Copy of proceedings transmitted to Secretary

of State not a certified copy. Failure to comply with statute renders organization void. *State* v. *Shaw,* 64 Maine, 263 and cases cited. Organized, if at all, for "election purposes" not sufficient to defeat plaintiffs' deed which holds until township is organized for "plantation purposes." *Bragg* v. *Burleigh,* 61 Maine, 444, 450.

*Davis and Bailey,* for defendants.

Trespass *q. c.* not maintainable. Plaintiffs have only the right to cut and carry away timber and grass; but no interest in the land was conveyed to them by land-agent's permit in 1853. *Putnam* v. *White,* 76 Maine, 555.

No statute for recording permits until 1857. Copy of records inadmissible in actions not touching the realty, or when title is not material to the issue. Action is brought under R. S., c. 95, § 18, which applies only to tenants in common, &c., of lands. Plaintiffs are part owners only. All owners should join. *Brooks* v. *Byam,* 2 Sto. 546-557. Amendment of declaration from trespass to case as in *Mathews* v. *Treat,* 75 Maine, 594, would defeat the action as all the partes reside beyond Aroostook County.

Counsel argued that both organizations of the plantation were valid, and cited : *Plantation* v. *Bean,* 40 Maine, 218 ; *State* v. *Woodbury,* 76 *Id.* 457. A *de facto* organization sufficient, in 1853, to exclude plantation from land-agent's power.

PETERS, C. J. In this action of *quare clausum* for cutting logs, in 1885, on the public lots in township A, R. 5, Aroostook County, the plaintiffs claim title to the lots under a deed from the land-agent of Maine, dated in 1853, and the defendants justify their cuttings by a license to cut given in 1883, by the land-agent, acting in behalf of the inhabitants of the township.

The deed of 1853, spoken of, confers on the grantee named therein, the right to cut and carry away the timber and grass from such lots until the township in which the lots are reserved should be incorporated into a plantation for election purposes. It is not claimed, nor can it be, that any such conveyance would be operative when the township became incorporated. The de-

fense to the action is that the township was already incorporated at the date of the deed. Whether that be so or not is the main question presented.

Section one of the elections act, passed at an extra session of the legislature on October 2, 1840, published in an appendix to the revised statutes of 1841, p. 771, reads as follows :

"An act in relation to elections. [Chap. 39.]

"Section 1. Be it enacted by the Senate and House of Representatives in Legislature assembled : That the qualified electors of unincorporated places may organize themselves into plantations, for the purpose of elections, in the following manner :— Any three or more of the inhabitants of any unincorporated place may apply, in writing, to one or more county commissioners of the county in which such place is situated, whose duty it shall be to issue his warrant to one of said applicants, directing him to notify and warn a meeting of the electors of said place, within such limits as shall be described in such warrant, at some specified central place, by posting up notice thereof and of its object, in two or more public places in said unincorporated place, seven days before the day of said meeting. And at the time and place appointed, a moderator shall be chosen by ballot, whose duty it shall be to preside at said meeting. And three assessors and a clerk shall also be chosen by ballot at the same time, who shall be sworn by the moderator or a justice of the peace. And the limits of all plantations, so organized, shall be described by said assessors, so chosen, and forwarded to the Secretary of State, and by him recorded."

The defendants allege that in 1844, the township in question and another township adjoining it were organized together into a plantation by the name of Molunkus ; and that the regular record of such organization has been accidentally lost.

There can be no doubt that an organization was at least attempted to be made. Very strong evidence of it is afforded by the certificate produced from the office of the Secretary of State, received there October 21, 1844, of the following tenor :

"Aroostook, ss. To the Secretary of State : This is to notify you that the inhabitants of township No. 1, range 4, and letter

A, range 5, west of the east line of the State, have this day, by virtue of a warrant issued by Jeremiah Trueworthy, one of the county commissioners within and for the County of Aroostook, organized ourselves into a plantation by the name of Molunkus, and we, as assessors of said plantation, respectfully notify you of the same, and request you to take cognizance of the same.

> JAMES B. CURRIER,        ⎱ Assessors
> CHARLES C. KIMBALL,      ⎬ of Molunkus
> WILLIAM MARTIN,          ⎰ Plantation."

Further evidence of both the existence and subsequent loss of the record is found in a mutilated book of records produced from a lot of old and neglected papers of a deceased clerk of the plantation, accompanied by the explanation of it given by witnesses. It contains a continuing record of the plantation elections and other matters, commencing in 1845, and extending into the year 1861, a book a good deal battered and worn, the covers gone, its leaves torn out from the beginning and at its end. It may be seen at a glance that the book has been in the hands of children for scribbling purposes, although there is no indication of intentional spoliation.

That there was an organization and a record of it, and a loss of such record, there cannot be a doubt. The missing portion of the book must have contained the records. The important question is whether the organization was a legal one or not.

In this condition of things oral evidence is admissible to prove the contents of the lost record. That is an undoubted principle. 1 Green. Ev. § 509. *Gore* v. *Elwell*, 22 Maine, 442. It happens that one of the first assessors of the plantation, James B. Currier, the only survivor of all the inhabitants who participated in the organization of 1844, evidently a person of memory, and intelligence, is enabled to be a witness on the subject. His fairness of statement seems to entitle his story to credence, corroborated as it is in partial respects by other evidence. He has no interest in the question, having removed from the plantation to Corinna, in 1847, where he has ever since resided. He clearly recapitulates the different steps taken to perfect the organization. He appears to have been an active and much interested

participator.   Space cannot be spared to incorporate herewith his extended testimony, and notice need only be taken of such objections as the opposing counsel, who has thoroughly investigated the case, urges against it.

It is objected against the sufficiency of Currier's testimony, that it does not appear therefrom that the warrant from the county commissioner described any plantation limits; or that the notice for the meeting was posted seven days prior to the meeting; or that it contained any notice of the object of the meeting.   Although the witness does not testify especially to these matters, his attention not being called to them, he says, after stating his memory of many things, "I know well enough, we had our meeting in regular shape, and followed it up as long as I lived there."   And the assessors communicated to the Secretary of State the fact of a completed organization, describing the territory organized.   It is reasonable to presume that such omissions did not exist.   The presumption of regularity in official proceedings comes in aid of the sufficiency of the acts done.   Regular in all things seen, regular in all things incidental thereto not seen is a natural deduction, in many conditions and circumstances.   It would be a strange notice of a public meeting that did not describe its purpose, and a very uncommon one in any municipal business that did not give at least seven days advertisement of the meeting.   The law requiring these steps reads plainly, and must have been examined as a guide for the forms to be observed in the proceedings undertaken.

The doctrine of presumption is commended by the law when applicable to a case like the present.   Irregularities in the proceedings to organize a corporation are not favored when set up long afterwards to defeat the corporate existence.   1 Dill. Mun. Cor. § 84, and cases in note.   After the lapse of thirty years, the presumption of regularity may be conclusively presumed in many cases.   *Freeman* v. *Thayer*, 33 Maine, 76; *Bassett* v. *Porter*, 4 Cush. 487, a case in which the existence of a school district was denied because no record of its formation could be

found, and the doctrine of presumption was successfully invoked to supply a record ; and the court among other things which would be apropos here, said : "Deeds and even records may be presumed to exist, or to have existed without any direct proof of their existence. Indeed, it may perhaps be maintained, that there cannot be any matter of fact, which a jury may not presume from other facts and circumstances. It is in truth but the exercise of sound reason, in inferring from facts which are shown, an existence of other facts which are not directly shown. The proof of certain facts, in a chain of events, leads directly and forcibly to the conclusion of the existence of the facts, which naturally and properly and usually precede those which are known and established." In that case not a vestige of any record was discovered, but the district had in fact existed for very many years.

The case at bar is a strong one for the application of the same principle, to supply, if need be, any partial deficiency of proof of organization. Here were proceedings to organize the plantation nearly half a century ago. The plantation, not then a month old, voted in the presidential election of 1844, and at all presidential and State elections until 1861, occasionally voting after that time ; for a long period raised money for the support of schools and other purposes ; was for many years recognized as a political division of the State, by receiving its portion of school money and mill tax, and in other ways ; and recognized as an organized place by the United States, by enrolling its able-bodied subjects on the lists from which drafts were made for the late war, and by enumerating its inhabitants in the census for several decades, that of 1880 showing the number of inhabitants to have been sixty-seven. It has always had a post-office called Molunkus. There are not many corporations or organizations whose records have been lost that could give better proofs of existence than these.

Other objections claimed by counsel to be of a more radical character than those already disposed of, are urged. It is contended that such objections are fatal to the validity of the organization even though all other requirements in its formation

may have been correctly observed. The first is that one plantation could not comprise more than one township. The statute says "the qualified electors of any incorporated place" may apply to have such place organized as a plantation. It does not say township, but place. This is a very strict objection. Here was a little village in the corners of two townships touching each other. The small community combined could support a school and bear other burdens of an organization,— if divided they could not. It was convenient to associate together. The statute was mindful of inhabitants rather than territory. Its purpose was to serve the interests of settlers rather than to devise any scheme touching territory. For that reason the word place should be liberally construed. Webster defines place as "an area,"— "any portion of space regarded as distinct from all other space." Certainly, two tracts of land are together an area, and can be regarded as a portion of space distinct from other space. Two adjoining places are but one place when consolidated. But the double township system had legislative sanction from 1844 to 1859, in which latter year an act was passed repealing all such organizations, on account of the supposed opportunity for practices of fraud in elections in plantations that consisted of such extended territory. It is historically known that many plantations consisted of more than one township, those in upper Aroostook covering the territory of several townships each. Even parts of townships were organized together, attention being given to natural rather than artificial boundaries, in order to group together different settlements. The State in various ways accepted and ratified this mode of organization until 1859, by repeatedly and in many ways recognizing them as distinct political divisions of the State. And the repealing act of 1859 is an admission that such organizations were valid until repealed. The State alone could complain of them.

The last alleged defect is that the warrant issued by the county commissioner did not describe any territorial limits of the proposed plantation, but merely recited that the inhabitants of two particular townships had applied for proceedings of organiza-

tion. It is only an inference of the counsel for plaintiffs that the warrant so read, an inference deduced from the language of the return to the Secretary of State by the assessors, in which they use the language imputed to the warrant. It does not follow that the warrant and the assessors' certificate were alike in this respect. The commissioner might be more skillful in executing his official act than the assessors were in describing what had been done. The assessors did not pretend to represent the form of either warrant or record, but only the result. And they made their certificate in the tone of the enabling act itself, denominated "An act in relation to elections," which provides that "the qualified electors of unincorporated places may *organize themselves into plantations*, for the purpose of elections."

Relying on the presumption that the lost papers were of a general correctness, there is nothing in the certificate sufficient to overturn the presumption.

But we are willing to go farther than that, and to express our opinion that the description of plantation limits in both warrant and record would be sufficient if they were the same as in the certificate. What can a certificate that the inhabitants of townships 1 and A have been organized as a plantation possibly mean unless that those townships are the territorial part of the plantation? It is impossible to organize electors or inhabitants alone into a plantation. The legislature understood the certificate and accorded to the organization all the privileges of a plantation. Its vote was never rejected or questioned. Although not in the mould of fashion or technical form, the meaning is just as unmistakable as if more directly expressed. Suppose it should be disclosed that certain towns in this State were a quarter or half century ago incorporated by the legislature in the same form as appears in this case, would anyone suggest that such legislative incorporations were not valid?

Although the form used in this State has been that certain territory, together with the inhabitants thereon, is hereby incorporated, Mr. Dillon gives the form differently in this way: "The inhabitants of a certain town (naming it) are hereby

incorporated as a body corporate by the name of—— &c." "The charter then defines," he says, "the territorial boundaries of the town or city thus incorporated." The author further says : "Although corporations in this country are created by statute, still the rule is here also settled that not only private corporations aggregate, but municipal or public corporations, may be established *without any particular form of words, or technical mode of expression*, though such words are commonly employed." He also says : "The settled doctrine is that a corporation may be created by implication, as well as by the use of words." 1 Dill. Mun. Cor. § 39, *et seq.* The form of incorporation for towns has never in this State been adapted to the incorporation of a city from a town. In the incorporation of any city in the State, the following formula has been adopted : "The inhabitants of the town of (Brewer), shall continue to be a body politic and corporate, by the name of the city of (Brewer), and as such, shall have, exercise and enjoy all the rights, immunities, powers, privileges, and franchise, and be subject to all the duties and obligations now appertaining to, or incumbent on said town as a municipal corporation," &c. Here the inhabitants are declared to be incorporated. The territory is constructively included. But the limits of Brewer were no more definitely known than were the boundaries of the two townships constituting the plantation of Molunkus.

It becomes unnecessary to examine the questions raised upon a later organization of township A, now Molunkus, after the State repealed the first organization, the defense resting upon either organization, inasmuch as the legality of the first plantation rendered the deed, under which the plaintiffs' right descends to them unauthorized and void.

*Plaintiffs nonsuit.*

LIBBEY, EMERY, FOSTER, HASKELL and WHITEHOUSE, JJ., concurred.