STATE OF MISSOURI ex rel. WILLIAM FAHRMAN, Appellant, v. J. C. ROSS et al., Respondents.*

**Springfield Court of Appeals, January 8, 1912.**

1. **LOCAL OPTION ELECTION: Determining Validity: Mandamus: Statutory Contest: Dramshops.** In a mandamus proceeding to compel the county court to issue a dramshop license, the validity of a local option election was involved and defendants contended that the only remedy for determining the validity of a local option election was the contest proceedings now provided by statute. *Held*, that the provision for contest is exclusive as to all mere irregularities, such as the qualification of voters, electioneering within prohibited limits, frauds of voters which may affect the result but not the integrity of the election. But it is not exclusive as to such matters as will show the election to have been void or that no election was in fact held. NIXON, P. J., in separate opinion holds that the statutory contest is exclusive of the remedy by mandamus.

2. ———: ———: **Statutory Contest: Jurisdiction.** Section 7242, Revised Statutes 1909, providing for contests of local option elections contains the provision that the result thereof may be contested in the same manner as is now provided by law for the contest of the election of county officers. *Held*, that this statute is not open to objection, that it does not provide what court shall have jurisdiction to try the contest.

3. ———: ———: ———: **Remedy by Contest Not Exclusive.** The remedy for contesting the validity of a local option election was provided for the purpose of permitting those interested to reach questions touching the regularity of the election and the correctness of the declared result, that could not be reached in the other proceedings and there was no intention by the enactment of that law to exclude any other remedy then open.

*For case of State ex rel. Rainwater v. J. C. Ross, see 161 Mo. App.

State ex rel. v. Ross et al.

4. ———: ———: **Notice as to Polling Places: Selection of Polling Places.** In a mandamus proceeding to compel the county court to issue a dramshop license in which proceeding the validity of a local option election was involved, it is *held* that the election was not void merely because the order calling the election and the notice of the election did not designate the polling places, neither was it essential to the validity of the election that the polling places be selected by the council of the city in which the election was held.

5. ———: ———: **Jurisdictional Notice of Election.** The jurisdictional notice in local option elections is the notice of the election which gives the date on which the election is to be held and names the place by naming the county or city in which it is to be held.

6. ———: ———: **Polling Places Selected by City Marshal.** Under the statutes of the state, as well as under the ordinances of Webb City, the marshal of said city is authorized to select polling places for a local option election.

7. ———: ———: **Notice as to Polling Places.** The statute provides how polling places may be selected, but the statute does not require such selections to be inserted in the order or notice calling for a local option election, and where the order and notice of said election recites that it will be held at the usual polling places in the city and there were in fact no usual polling places, *held*, in a mandamus proceeding in which the validity of the local option election was involved, that the recital in the notice as to the usual polling places will be rejected as surplusage and will not be used to destroy the validity of said election.

9. ———: ———: **Notice of Election: Limitation on Municipal Authority.** It is beyond the power of a city council to require any notice in addition to that provided by statute in order to hold a legal local option election.

10. ———: ———: **Ballots: Notice as to Form of Ballots Not Required.** The statute relating to local option elections provides that if deemed expedient the county court or municipal body ordering the election may provide for the use of a ballot in which may be printed both the sentences, "Against the Sale of Intoxicating Liquors," and "For the Sale of Intoxicating Liquors," and also the further direction, "Erase the clause you do not want," but there is no requirement as to when the order for the use of this form of ballot shall be made, nor is there any provision regarding notice that such a ballot will be used.

11. ———: ———: **Ascertaining Results of Election: City Council Adopting Report of Committee.** The ordinances of a city in which was held a local option election provided that the

council shall determine the result of elections, but neither the statute nor the ordinances provide how this should be done. *Held*, that the appointment of a committee to go over the returns and tabulate the results was a very proper way to ascertain such results; and by adopting the report of the committee and entering the results on the record, the council properly performed its duty.

12. ———: ———: ———: **Failure to Perform Duty.** The failure of a body charged with the duty of ascertaining and publishing the results of a local option election, to properly perform its duty does not render the election void, nor destroy its force until the lapse of so great a length of time that it may be unreasonable to permit a correction thereof.

13. ———: **Jurisdictional Requirements.** The jurisdictional requirements which are essential to the validity of a local option election are the filing of a proper petition with, and an order for the election by, the city council or county court, and notice of the election, all of which must be in substantial compliance with the statute.

## Appeal from Jasper Circuit Court.—*Hon. B. G. Thurman,* Judge.

AFFIRMED.

*M. R. Lively* for appellant.

(1) The statute and ordinance providing that the council shall designate the time and place is mandatory; that was a duty which the council could not delegate; the place of holding the election was not fixed in the notice; this being a special election, the statute and ordinance must be strictly followed. State ex rel. v. Tucker, 32 Mo. App. 620; Bean v. County Court, 33 Mo. App. 635; Haddox v. County, 79 Va. 677; Morgan v. Gloucester, 44 N. J. L. 137; People v. Weller, 11 Cal. 49. (2) Designation of polling places is most important, because that act notifies citizens where their votes can be cast. Coughlin v. Kirkwood, 107 Mo. App. 318; George v. Township, 16 Kas. 88; Stephens v. People, 89 Ill. 337; McCrary on Election (3 Ed.), sec. 145; Dickey v. Hulbert, 5 Cal. 343. (3) The law govern-

ing special elections must be strictly followed. Westbrook v. Roseborough, 14 Cal. 180; Haddox v. County, 79 Va. 677; Martin v. Bennet, 139 Mo. App. 237. (4) The authority to designate the polling places in a special election cannot be delegated to another person. Thorburg v. School District, 175 Mo. 26. (5) The notice of election should clearly state the particular place where the election is to be held. Hausworth v. Muller, 25 Mont. 156, 64 Pac. Rep. 324; People v. Caruthers School District, 102 Cal. 184, 36 Pac. Rep. 396; Hilburn v. Railroad, 23 Mont. 247; People v. Coehenour, 54 Ill. 123; Stephens v. People, 89 Ill. 337; Hendersonville v. Jordan, 63 S. E. 167; McPike v. Penn, 51 Mo. 63. (6) The statute and ordinance requiring the council to designate and fix the polling places and publish the same is mandatory. State v. Martin, 83 Mo. App. 55; Donnell v. Lee, 101 Mo. App. 191; West v. Ross, 53 Mo. 350; State ex rel. v. Baldwin, 109 Mo. App. 573; State ex rel. v. Reed, 134 Mo. App. 582; State ex rel. v. Ruark, 34 Mo. App. 325; Stephens v. People, 89 Ill. 337. (7) There can be no election without a legal ballot. As illegal ballots could not be counted. McKay v. Miner, 154 Mo. 608; West v. Ross, 53 Mo. 350; Ledbetter v. Hills, 62 Mo. 422; People v. Hanson, 150 Ill. 122, 36 N. E. 998, 37 N. E. 580; State v. Swearington, 128 Mo. App. 613; Gumm v. Hubbard, 97 Mo. 311; Turner v. Drake, 71 Mo. 285; Shields v. McGregor, 91 Mo. 534. (8) The result of the pretended local option election was not entered upon the records of the city council of Webb City as required by section 3028, R. S. 1909. This statute is mandatory. State v. Swearington, 128 Mo. 610; State v. Mackin, 41 Mo. App. 99; White v. Brim, 48 Mo. App. 111; State v. Prather, 41 Mo. App. 451; State v. Sercy, 39 Mo. App. 393.

*W. N. Andrews, A. M. Baird* and *W. R. Robertson* for respondent.

(1) The local option election is governed by the provisions of article 3, chap. 63, R. S. 1909, secs. 7238 to 7246 inclusive. (2) If the statute expressly declares any particular act to be essential to the validity of the election, or that its omission shall render the election void, all courts whose duty it is to enforce such statute must so hold, whether the particular action in question goes to the merit or affects the result of the election or not. Such statute is imperative and all considerations touching its policy or impolicy must be addressed to the Legislature. But if, as in most cases, that statute simply provides that certain acts or things shall be done within a particular time or in a particular manner and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do and directory if they do not, affect the actual merits of the election. McCrary on Elections (4 Ed.), sec. 225; State v. Swearingen, 128 Mo. App. 613; Sanders v. Lacks, 142 Mo. 255; State ex rel. v. Swanger, 212 Mo. 472; 15 Cyc. 318. (3) The principles announced in the cases cited under the above point obtain with respect to elections on the Local Option Law. State v. Swearingen, 128 Mo. 614. (4) In the absence of any showing of fraud or injury, or unless the law expressly declares the irregularities to be fatal, proof of the non-performance by the election officials of a mere ministerial act, or its irregular performance will have no weight when offered simply for the purpose of setting aside the election. And so proof of the irregularities or defects in calling or ordering the election, the giving of the notice thereof, or the appointment of election officials will not invalidate the proceedings. 5 Ency. of Evidence, 101; Ex parte Leach, 149 Mo. App. 317, 132 S. W. 1075; O'Laughlin v. Kirkwood, 107 Mo. App. 302; Peo-

ple v. Brown, 60 N. E. (Ill.) 46; Seymour v. Tacoma, 33 Pac. (Wash.) 1059; Stearns v. State, 100 Pac. (Okla.) 915; Wheat v. Smith, 50 Ark. 266; Hersefall v. School District, 128 S. W. 33, 143 Mo. App. 541; State ex rel. v. Roberts, 153 Mo. 122; State ex rel. v. Shanks, 125 N. W. (S. Dak.) 122; Preston v. Culbertson, 58 Cal. 198; Bauer v. Denmark, 122 N. W. (Mich.) 121; State ex rel. v. Laughlin, 67 N. W. 958; Ex parte Schilling, 42 S. W. (Tex.) 553; Sneed v. State, 49 S. W. (Tex.) 595; Norman v. Thompson, 72 S. W. (Tex.) 64; In re Rowley, 70 N. Y. Sup. 208; Foster v. Scharff, 16 Ohio St. 537; Dishon v. Smith, 10 Iowa, 212; Brown v. Street Lighting Dist., 55 Atl. (N. J.) 1080; Buchanan v. Graham, 81 S. W. (Tex.) 1237; Irwin v. Gregory, 13 S. E. (Ga.) 120; 19 Am. and Eng. Ency. of Law (2 Ed.), 504; 15 Cyc. 372; Dill. Mun. Corp. (4 Ed.), sec. 197. (5) The city could not by ordinance require more concerning the method of conducting elections than the statute provides and any additional requirements are unauthorized and void. State ex rel. v. Gordon, 217 Mo. 103; State v. Kansas City, 134 S. W. 1011.

COX, J.—Respondents are judges of the county court of Jasper county and this is an action by mandamus to compel them to issue to relator a license to keep a dramshop within the city of Webb City. Webb City is a city of the third class and the license was refused solely upon the ground that the Local Option Law had been adopted in Webb City. A local option election was held in Webb City on February 1, 1910 and at such election a majority of the votes cast were against the sale of intoxicating liquor and the validity of that election is the issue in this case. At the trial in the circuit court, the peremptory writ of mandamus was denied and relator has appealed to this court.

It has been suggested that since the statute now provides for a contest of a local option election that

that remedy is exclusive and that the validity of the election cannot be questioned in any particular in any other proceeding. In answer to this suggestion it is first contended that the statute is invalid because it does not provide what court shall have jurisdiction to try the contest. The statutory provision on this question is as follows: Sec. 7242, Stat. 1909 ". . . . . . the election in this article provided for and the result thereof may be contested in the same manner as is now provided by law for the contest of the elections of county officers in this state, by any qualified voter of the municipal body or of the county in which said local option election shall be held by an action to contest as herein provided and which shall be brought against the municipal body or the county holding said election."

The portion of this provision which provides who shall be parties to a proceeding to contest was added by amendment in 1909. Prior to this time this provision was held inoperative because of the omission to provide for parties in the contest proceeding. [Kehr v. Columbia, 136 Mo. App. 322, 116 S. W. 428; Haas v. Neosho, 139 App. 293, 123 S. W. 473; State v. Gamma, 149 App. 694, 129 S. W. 734.] The amendment was made to cover this omission. The objection is now made that, because the court in which the contest is to be tried is not named, that it is still invalid. The provision is that the election may be contested in the same manner as is now provided by law for the contest of the election of county officers. The evident intention of the law makers was to provide that any qualified voter desiring to contest a local option election should proceed exactly as he would if contesting the election of a county officer and he would readily understand that he was required to proceed in the same court as well as to follow the same form of procedure. We do not think the law open to the objection made against it.

Is then the provision for contest exclusive and can the validity of the election be attacked in no other way? The power to determine election contests, unless restricted carries with it jurisdiction to hear and determine every possible objection which may be urged against the validity of the election itself or the correctness of the declared result thereof. There is no doubt that all these questions may be passed upon in a proceeding to contest but does it necessarily follow that none of these questions can be passed upon in any other proceeding?

It has been held in some jurisdictions that where the statute authorized a contest proceeding to contest a local option election that such provision is exclusive and that the validity of such election is not open to collateral attack, or to impeachment in a proceeding by mandamus to compel the issuing of a license to sell liquor. [23 Cyc. 101, under the head of "Intoxication Liquor."] We find also in 15 Cyc. 394 under the head of "Elections," the statement that it has been held that where a specific mode of contesting elections has been provided by statute, that mode is exclusive, and then, in the next paragraph it is said: "But it will be found upon examination that the decisions which hold thus are based upon peculiar constitutional and statutory provisions; and the better opinion as supported by the apparent weight of authority is that a special remedy given by statute is merely cumulative."

In all those states in which it has been held that the provision for contest of a local option election is exclusive and that the validity of the election cannot be attacked collaterally it has also been held that an attack upon the validity of the election by one prosecuted for violation of the law is a collateral attack, and yet, as far as we can learn the party charged with violation of the law is permitted to show as a defense that the

160 App.—44

election was void. [See Commonwealth v. Jones (Ky.), 84 S. W. 305.] In Norman v. Thompson (Tex.), 72 S. W. 62, it is said that a contest concludes no question that may be raised in a prosecution for illegally selling liquor. It would thus seem that in that state had there been a contest and the election adjudged valid, a party prosecuted for violating the law could show it to be invalid as a defense to such prosecution. In our opinion the correct rule is that a provision for contest is exclusive as to all mere irregularities,. such as the qualifications of voters, electioneering within prohibited limits, frauds of voters which may affect the result but not the integrity of the election, etc., but is not exclusive as to such matters as will show the election to have been void or that no election was in fact held. We think this rule is in harmony with the established policy of this state. While we have a law providing for contest of elections of county and other officials, is has never been held to supersede the right to proceed by *"quo warranto"* and in that proceeding it may be shown that the election, by force of which the incumbent holds his office was void, and on that showing being made, he will be ousted. [State ex rel. Harrison v. Frazier, 98 Mo. 426, 11 S. W. 973.] In Gaston v. Lamkin, 115 Mo. 20, an election had been held to vote a special levy of taxes to build two courthouses in Jasper county and in a proceeding to set aside an order of the county court levying a tax thereafter for the purpose of carrying out the will of the voters, the validity of the election was passed upon. In State ex rel. v. McGann, 64 App. 225, which was a proceeding by mandamus to compel the inspectors, who had canvassed the vote in an election of directors of a corporation, to certify what the relators deemed the true returns, the point was made that there was another remedy provided by statute, hence mandamus would not lie. This was overruled and the cause heard. The St. Louis Court of Appeals, speaking through Judge

ROMBAUER, held that the other remedy provided by statute did not destroy the right then existing to proceed by mandamus and said: "It has always been the policy of the courts of this state to treat statutory remedies as cumulative and not as exclusive of common-law remedies unless the contrary intention of the Legislature clearly appeared by the context of the statute." There is no expressed intention in the local option statute to make the provision for contest of the election exclusive and we do not think such was the intention of the Legislature. A provision for contest was in the law when it was first enacted in 1887 in these words: "The election in this article provided for and the result thereof may be contested in the same manner as is now provided by law for the contest of the elections of county officers in this state." This provision remained unchanged until 1909 when it was amended by providing who should be parties in the contest. From the time the law was first enacted in 1887 to the decision in the case of Kehr v. Columbia, supra, in February, 1909, this provision seems to have been unnoticed and the common practice in all these years was to contest the validity of a local option election either by mandamus proceeding similar to this case or by some one who was prosecuted for violating the law raising the question as a defense. In such proceedings, however, only questions which went to the validity of the election could be considered and all questions which only went to affect the result but did not attack the integrity of the election itself was excluded. [State v. Gamma, 149 App. 694, 129 S. W. 734.] The Kehr case was a proceeding under the statute to contest a local option election in the city of Columbia and it was pointed out in that case that the statute was invalid because no parties, contestant and contestee, were provided for. The Legislature, then in session, must have had its attention called to this decision, and must also have been familiar with the

fact that the law of the state as it then was, permitted the validity of a local option election to be tested in a mandamus proceeding as well as in a criminal prosecution, and must also have known that in the then state of the law, the attack on the validity of the election in the modes indicated was a collateral attack and that only those questions which went to the validity of the election could be considered. With these facts before them, the law makers amended the law with a view of making it available without inserting any provision that the remedy therein provided should be exclusive. Our conclusion is, that the remedy by contest was provided for the purpose of permitting those interested to reach questions touching the regularity of the election and the correctness of the declared result that could not be reached in the other proceedings and that there was no intention by the enactment of that law to exclude any other remedy then open.

This bring us to a consideration of the questions which, it is contended, render the election void. The first contention is that the order calling the election and the notice of the election should have designated the polling places and also that the polling places must be selected by the council and as this was not done, the election is void.

The statute, Secs. 7239-7240, Rev. Stat. 1909, providing for the order of election and notice simply provides that on the presentation of a proper petition an election should be ordered held in such city and a notice thereof should be given by publication in a newspaper, etc. The language of the statute is general and what the order or notice shall contain is not specified in any particular. The contention of appellant is that time and place are of the substance of every election and that by the term place is meant the polling place and that when polling places are to be selected and notice of election given, then the polling places must be selected before the notice of election is given

and the notice of election must include notice of the location of the polling places.

To the general proposition that time and place are of the substance of an election we give our unqualified assent, and if the statute in terms required the polling places to be designated in the order for the election, or the notice of election, we should hold such a provision mandatory, and an election held without this provision being complied with void. As we view it, the things upon which jurisdiction to hold such an election as this rests are, a proper petition, an order for the election and notice of the election. If all these are in substantial compliance with the statute, then jurisdiction attaches and up to this point all specific provisions of the statute should be held mandatory and a substantial compliance with its terms required. Thornburg v. School District, 175 Mo. 12, 75 S. W. 81; Martin v. Bennett, 139 App. 237, 122 S. W. 779; State ex rel. v. Martin, 83 App. 55; People ex rel. McCune v. Weller, 11 Cal. 181; Russell v. McDowell (Cal.), 23 Pac. 183; Gaston v. Lamkin, 115 Mo. 20, 21 S. W. 1100; Johnston v. Robertson (Ariz.), 76 Pac. 465; State ex rel. v. Salt Lake City (Utah), 99 Pac. 255.]

The entire question of elections is one for statutory regulation, and the decision of a question arising under the election laws is usually one of construction of the statute under which the election is held. That is true in this case, and the question now under consideration must be determined by a proper construction of our statute. The decisions of other states are of value only in so far as they construe analogous or similar provisions. Our statute does not prescribe the form of the order for the election or notice and makes no specific provision as to what either shall contain. In harmony with the general rule that in all jurisdictions time and place are regarded as of the substance of every election, we are of the opinion that

no body on whom is cast by law, the duty to call, and give notice of, an election can properly discharge that duty and disregard this general rule, neither would a statute be of any force which should ignore it. The difficult questions arise on the application of the rule in particular cases. As to the time of the election no question is raised but it is contended that while the statute does not in terms require the order or notice of election to designate the polling places, yet, to follow the general rule, that time and place of an election is of its very substance, it is necessary to read into the statute the provision that the order and notice must designate the polling places, because the term "polling place" is synonymous with "place of election." We do not think so. The term place has a great variety of meanings according to the connection in which it is used. Webster gives the following among other definitions: 1—Any portion of space regarded as measured off or distinct from all other space, or as appropriated to some definite object or use; position, ground; site; spot; etc. 3—A position which is occupied and held; a dwelling; a mansion, a village, town or city; a fortified town or post; a stronghold, a region or country.

The term has also been defined in many adjudicated cases and has always been given a meaning in harmony with the end sought to be obtained in relation to which the term was used. When used in a statute it has been held to mean a space covering several townships or parts of two or more townships. Prentiss et al. v. Davis et al. (Me.), 22 Atl. 246.

It has been held to be synonymous with town or city. [Palmer v. Wakefield, 102 Mass. 214.]

The entire premises enclosed with a still, in construing a statute permitting liquor to be sold at the place where made. [State v. Hurd, 64 App. 334.]

A Texas statute required an applicant for license to sell liquor to designate in his application, "The

place in which it is proposed to engage in the sale of such liquor, . . . . . ." Held that in a town in which the streets and houses were not numbered the term "place" mentioned in the statute would mean the town in which he wished to sell, and that it was not necessary in that case to give the location of the building. [Green v. Southard (Tex.), 61 S. W. 705.]

A Montana statute in relation to elections in school districts of 60,000 population, provided as follows: "Such election shall be called by posting notices in three public places in the district . . . . . The notice shall contain the time and place of holding the election . . . . . ." It was held that that statute required the polling places to be designated in the notice. [Hauswirth v. Mueller (Mon.), 64 Pac. 324.]

Under a very similar statute our own Supreme Court held also that the notices of election should contain a designation of the polling places. [State v. St. Louis, K. C. & Northern R. R. Co., 75 Mo. 526.]

From the above authorities it is clear that the term "place" when used in a statute does not necessarily mean a certain spot, but may, and ofter does, mean a certain territory. It's meaning depends entirely upon the connection in which it is used. Our local option statute does not use the term at all, and the meaning of the term is only called in question in this case by the application of the general rule that in construing statutes relating to elections the time and place of the election are of its substance and must be considered. We think in such a case the application of the rule should be made to the general purpose of the statute and it given such construction as will further that purpose rather than a construction that will destroy it. The statute in its general scope recognizes the rule as to place and provides in what territory an election of this kind may be held. It cannot extend beyond the limits of a county. It may include the entire county if there be no city in the county of 2500 population.

In that case the place of the election is the county. A city of 2500 or more population may hold such an election separate from the county. In that case the place of the election is the city. Neither a county nor a city can divide its territory and hold an election on this question in less that its entire territory, and while we hold that time and place are essential in all elections and must be fixed in both the order and notice of election, yet, in the absence of a statute requiring a different construction, the place referred to means the territory within which the election is to be held and does not mean the polling places. When a statute after providing for an election in a designated territory goes farther and provides that notice of the place of holding the election must be given, as was done in the two cases last cited, this provision then means that notice of the location of the polling places must be given. Neither the general election statute nor the local option statute requires notice of the selection of polling places to be given. The Legislature has not seen fit to require such a notice and the common experience of the people has demonstrated that such a notice is not necessary. The election precincts are not usually large and the polling places are easily found and as far as our knowledge goes no man has ever been deprived of his right to vote in either a general election or a local option election by not being able to find the polling place, and such a requirement of the law if enacted would serve no useful purpose at all. The jurisdictional notice in elections of this kind is the notice of the election which gives the date on which the election is to be held, and names the place by naming the county or city in which it is to be held.

The proof shows that the marshal selected the polling places and reported same to the clerk and he published notice of their location. It is contended that the marshal had no authority to make the selection and for that reason there could be no legal election be-

cause there was no place where a voter could legally deposit his vote. The statute providing for local option elections in cities of 2500 or more inhabitants, to-wit, Sec. 7239, Stat. 1909, provides: ". . . . such election shall be conducted, the returns thereof made and the result thereof ascertained and determined in accordance in all respects with the laws and ordinances governing municipal elections in such city." Turning to the provisions applicable to city elections in cities of the third class, we find in Sec. 7145, Stat. 1909, the following provision: "The polling places for all elections in such cities and the judges thereof shall be selected and specified by the respective city councils of such cities by resolution, ordinance or otherwise . . . . . . all city elections shall be held under the provisions of the general election laws of the state; . . . . and all duties specified to be performed by the constable or sheriff in the state election laws shall be performed by the marshal in city elections . . . . ." Turning to the state election laws to find what is the duty of the sheriff, we find in Sec. 5803, Stat. 1909, the following: "If the court fails to designate the place of holding the election . . . it shall be the duty of the sheriff to fix the place." Construing all these provisions of the statute together, we find that as to a city election the duties of the city marshal are the same as the duties of the sheriff in a county election. If the county court, the body primarily charged with the duty to designate the polling places, fails to make such designation, then that duty devolves upon the sheriff; so in a city election, if the city council on whom the statute places primarily the duty to designate the polling places in a city election shall fail to do so then it becomes the duty of the marshal to select them. Thus far we have considered this question from the provisions of the statute alone. We call attention also to the fact that the statute, Sec. 7239, supra, provides that such election shall be con-

ducted in accordance with the laws and *ordinances* governing municipal elections. The ordinances of the city when not in conflict with the statute are to be considered also. Webb City had in force at the time of this election a general ordinance covering the conduct of city elections and in that we find the following provision: "It shall be the duty of the city marshal under the direction of the mayor to provide in each ward or voting precinct a convenient polling place and accommodations where the election shall be held." Under this ordinance it became the duty of the marshal to select the polling places under the direction of the mayor and as he did select them we may presume in the absence of a contrary showing that he did it under the direction of the mayor. It will thus be seen that whether we look to the statute alone or to the ordinance, the power of the marshal to select the polling places is upheld.

The next proposition urged upon our attention is that since the order and notice of election in this case recited that the election would be held at the "usual polling places" in the city and there being no "usual polling places," made an election in conformity to the order and notice impossible. The evidence discloses that there were no "usual polling places" in the city. The usual practice was to select any vacant room or building in each ward that could be secured for the purpose and the same place was not secured in all elections, nor so frequently, that it could be said that any particular room or building in any ward of the city was the usual polling place for that ward. The statute provides how polling places may be selected but, as we have already determined, the statute does not require such selection to be inserted in the order or notice. This is not an election contest in which all questions which may have affected the result of the vote as well as those touching the legality of the election are open. No fraud in this particular

is alleged, and no claim that anybody was misled by this provision appearing in the order or notice of election, and it being a statement not required by law and being, besides, impossible to be complied with, it should be rejected as surplusage and not used to destroy the validity of an order or notice otherwise regular.

There was a city ordinance in force at the time of this election which provides as follows: ''The mayor or acting mayor shall by proclamation give at least ten days notice of the time, places and purpose of holding an election, which notice shall be published in each issue of the paper doing the city printing for ten days preceding such election.'' The original notice of election was in the form of a proclamation by the mayor but it did not designate the polling places farther than to say that the election would be held ''at the polling places in the various wards where city elections are usually held.'' It is now contended that under the ordinance the failure of the mayor to issue and publish a proclamation ten days or more before the election specifically fixing the polling places and giving notice of the time and purpose of the election was fatal. The evidence discloses that elections were generally held at polling places selected by the marshal, and this was done in this case. Subsequent to the mayor's proclamation, the counsel instructed the marshal to select the polling places and report to the clerk for publication. This was done and evidently the polling places were selected by the marshal under the direction of the mayor, and at the polling places so selected voters assembled without objection and all voted, and even if it be conceded that the ordinance was not complied with to the letter, yet it was only a mere irregularity that in nowise affected the voters or the result of the election. A further answer to this contention is that the statute providing for local option elections in the cities of 2500 or more also pro-

vides what notice shall be given and it was therefore beyond the power of the city council to require any additional notice in order to hold a legal election. [State ex rel. v. Gordon, 217 Mo. 103, 116 S. W. 1099; State ex inf. v. Kansas City, 233 Mo. 162, 134 S. W. 1007.]

The provision in the law that elections of this character should be conducted in accordance with the laws and ordinances governing municipal elections in a city did not authorize the city council to add to the jurisdictional requirements of the statute in relation thereto. Hence if this provision of the ordinance had been entirely ignored and no notice at all given by the mayor or clerk under it, such failure on their part would not have rendered the election void. As we have already said, the jurisdictional notice which was necessary to give validity to the election was the notice provided for by the statute and when that notice was given as required by the statute jurisdiction to hold the election attached and all other questions concerning additional notice as provided by ordinance could go no farther than to affect the result in some way and could not destroy the validity of the election. In this case notice was in fact given as required by the ordinance except that the clerk gave it instead of the mayor. Great interest was manifested and a very large vote polled so that if this were a contest proceeding the evidence preserved in this record would not justify a finding that any voter was misled by the failure of the mayor to issue and publish a proclamation as directed by the ordinance. In no event can the election be held void on that account.

The ballots used at this election which were prepared by order of the council and furnished to the voters at the polls had on them the words "against the sale of intoxicating liquor," "for the sale of intoxicating liquor," and the words "Erase the clause you do not want." It is conceded that the ballot is in correct form provided its use had been properly order-

ed by the council; but it is contended that if that form of ballot was to be used the order for its use should have been made when the election was ordered, and that the election notice should have had included in it the fact that this form of ballot would be used. This contention is based upon the provision of Sec. 7241, Rev. Stat. 1909, which is as follows: ''All persons voting at any election held under the provisions of this article, who are against the sale of intoxicating liquors shall have written or printed on their ballots, 'Against the sale of intoxicating liquors,' and all those who are in favor of the sale of such intoxicating liquors shall have written or printed on their ballots, 'For the sale of intoxicating liquors,' provided, that if the county court or municipal body ordering such election deem it expedient they may order that both the above sentences may be written or printed on the tickets to be used and voted at said election, with the further instruction printed on such tickets or ballots, 'Erase the clause you do not want.' '' The order of the city council directing that both sentences be printed on the same ballot was made January 17th, fifteen days before the election, and no notice that such a ballot would be used was given. On these facts and the provisions of the statute, relator contends that all the ballots used were invalid, and, hence no legal votes were cast. It will be noticed that the statute simply provides that, if deemed expedient, the county court or municipal body ordering the election may provide for the use of a ballot in the form used at this election. There is no requirement as to when the order for the use of this form of ballot shall be made, nor is there any provision requiring notice that such a ballot will be used to be given. The provision for the use of a certain form of ballot is for the convenience of the voter, and that there may be no mistake in securing a fair expression of the will of the voters. We can see no reason why public notice that a ballot of a certain form

would be furnished the voters should be given. The Legislature evidently did not think such a notice necessary, or it would have provided for it. Our conclusion is that no error was committed in that respect.

It is next contended that the result of the election was not canvassed and returned as required by the statute and the ordinances of the city and the result entered upon the record as required and that for this reason the election is void. The local option statute, Sec. 7239, Stat. 1909, provides: "Such election . . . shall be conducted, the returns thereof made and the result thereof ascertained and determined in accordance in all respects with the laws and ordinances governing municipal elections in such cities." Also, "The result of such election shall be entered upon the journals or records of the body ordering the same . . ." The statute relating to election of officers in cities of the third class, Sec. 9145, Stat. 1909, provides: ". . . The manner of making returns of such elections shall be prescribed by ordinance . . ." The election ordinance of Webb City, No. 583, Sec. 71, provides: "At the next adjourned or regular meeting of the city council after an election shall have been held, the city clerk shall in the presence of the council open said election returns. The council shall thereupon determine who has been elected to the various offices. . . ." The record of the proceedings of the city council shows the result of the election as follows: Record No. 3, page 234: "The report on returns from the special local option election held in this city on Tuesday February 1, 1910, as appears on inserted sheet was read showing that "against the sale of intoxicating liquors" received a majority of sixty-seven votes. Motion by Danglade, seconded by Arnold, that the report be received and filed and the proper publication of the result of the election be made. Carried by following vote. "Yes." [Here

follow names of eleven councilmen who voted yes.]
Said inserted sheet is as follows:

February 7, 1910.
"To the Hon. Mayor and Council of the City of Webb
City, Missouri:

"Having canvassed the returns of the special election held in this city on Tuesday, February 1, 1910
we find the result to be as follows:" (Here follows
a tabulated statement showing the number of votes for
and against the sale of intoxicating liquor in each
ward in the city and giving the majority for or against
in each ward, then the total vote for and against the
sale of intoxicating liquor in the city and the final result showing that "Against the sale of intoxicating
liquor" received a majority of sixty-seven votes) "respectfully submitted this 7th day of February, 1910."
Signed by one councilman from each ward.

It will be observed that the local option statute
applying to cities, Sec. 7239, provides that the result
shall be ascertained in the same way that the result
of a municipal election in the city is ascertained and
that the result shall be entered on the journals or records of the body ordering the election. The statute
relating to municipal elections in cities of the third
class, Sec. 9145, provides that the manner of making
returns of such elections shall be prescribed by ordinance. We are therefore remitted to the ordinances
of the city to determine how and by whom the result
of the election shall be ascertained. After the result
is ascertained, then the statute requires such result
to be entered upon the journal or record of the council. The ordinance provides that the city clerk "shall
in the presence of the council, open said election returns. The council shall thereupon determine who has
been elected, etc." In this case the council should determine which side of the question voted upon had the
most votes. There is nothing in the record to show

how or by whom the returns were opened but in the absence of a showing to the contrary, we assume that the clerk opened them in the presence of the council as the ordinance required. We gather from the record that after the returns were opened, a committee consisting of one councilman from each ward, was selected to ascertain the result. Upon their making a report of their findings, that report was adopted and the report as well as the result was entered upon the record and publication of the result ordered. The ordinance provides that the council shall determine the result but neither the statute nor the ordinance provides how it shall be done and it seems to us that the appointment of a committee to go over the returns and tabulate the results was a very proper way to ascertain what the results were and by adopting the report of the committee and entering the result on the record, the council properly performed its duty in that particular. If this were not true, however, it would avail the relator nothing in this case unless by the lapse of time it has now become too late to correct the error. The failure of the body charged with the duty of ascertaining and publishing the result of a local option election to properly discharge its duty does not render the election void nor destroy its force until the lapse of so great a length of time that it would be unreasonable to permit a correction thereof. [State ex rel. Church v. Weeks, 38 Mo. App. 566; State v. Mackin, 51 Mo. App. 299.]

We have carefully examined all the questions submitted to us by counsel in their briefs and upon the oral argument for the reason that counsel have earnestly insisted that the irregularities of which they complain rendered the election void. We may add that in our judgment the jurisdictional requirements which are essential to the validity of an election of this character are the filing of a proper petition, an order for the election by the city council and notice of the elec-

tion in substantial compliance with the statute and in these particulars there must be a substantial compliance with the statute in order that a valid election may be held. All other questions relating to the conduct of the election to be available in this proceeding must be of such a character as to show that the election provided for in the petition, order and notice was not, in fact, held. Irregularities which affect the result of the election but do not go to the extent just indicated can only be reached in a contest proceeding.

Our conclusion is, after a careful examination of the record in this case that the law was substantially complied with in all its essential requirements. The election was fair and there is nothing to indicate that the result does not express the will of the voters and we can see no reason why their will as expressed at the polls should not be upheld and enforced. *Gray, J.,* concurs. *Nixon, P. J.,* concurs in the result.

## SEPARATE CONCURRING OPINION.

NIXON, P. J.—The questions of law and fact involved in this case, being similar to those in the case of State of Missouri ex rel. Rainwater v. J. C. Ross et al., decided at this term of court, in which I filed a separate concurring opinion, reference is made to said opinion as containing my conclusions as to the decision of this case. The remedy to determine the validity of a local option election, as held in said opinion, is by the statutory contest which is exclusive of the remedy by mandamus. For that reason, the judgment in this case was for the right party and should be affirmed.