[Civ. No. 3281.   Second Appellate District, Division Two.—January
23, 1920.]

## SOL COHN et al., Petitioners, v. EDWIN ISENSEE, City Clerk, etc., Respondent.

[1] STATUTES—EXCLUSION OF GENERAL BY SPECIAL LAW.—Though it is
the general rule that a special controls a general statute, without
regard to their respective dates, still it is not always or necessarily
true that a special law entirely excludes from its field of operations
the provisions of a general law, where the two can occupy the same
domain without any inherent antagonism.

[2] ID.—RECALL OF MUNICIPAL ELECTIVE OFFICERS—CONSTRUCTION OF
SPECIAL ACT AND GENERAL LAWS TOGETHER—FORM OF BALLOTS—
PROVISION OF BLANK SPACES.—The recall act of January 2, 1912,
which provides for the recall of elective officers of incorporated
cities and towns, and sections 1196 and 1197 of the Political Code,
which are a part of the general law that deals with the subject of
elections in a general and comprehensive manner, are *in pari
materia* and should be read together with a view to giving effect to
a consistent legislative policy, namely, to provide that at each and
every election held in this state at which a candidate for public
office is to be voted for, whether it be a general municipal election
or a special municipal election for the recall of an incumbent, none
but official ballots furnished by the state shall be used, and on
each and every ballot there shall be suitable spaces wherein any
qualified elector may express his choice by writing in the name of
any person, and not be required to choose between the persons
whose names may be printed on the ballot as nominees for election.

[3] ID.—CONSTRUCTION OF STATUTES RELATING TO SAME SUBJECT MAT-
TER.—All consistent statutes which can stand together, if related
to the same subject, shall be construed together, and with reference
to the whole system of which they form a part, and shall be
harmonized, and effect given to all, if this can consistently be done,
so as to make the law consistent in all its parts and uniform in
its application and results.

[4] ID.—GENERAL LAW EMBRACING SUBJECT MATTER OF SPECIAL LAW—
CONSTRUCTION OF—ABSENCE OF REPUGNANCY.—Where it does not
clearly appear that the legislature intended to prescribe by a
special statute all the rules that should govern recall elections, and
it does appear that the language of a general statute is so com-
prehensive that it literally embraces the subject matter of the

3. Construction together of contemporaneous statutes *in pari
materia*, 18 Ann. Cas. 424; Ann. Cas. 1915A, 186.

special statute, the special will not exclude the general statute from the field that it occupies, unless there is a necessary repugnancy between the acts.

[5] ID.—EXPRESSIO UNIUS EST EXCLUSIO ALTERIUS—NOT APPLICABLE TO RENDER STATUTE INVALID.—The maxim *expressio unius est exclusio alterius* expresses but one of the canons of interpretation, and it should not be used as a guide for the construction of a statute when, if adopted, its application would invalidate the very statute sought to be construed, by making it violative of some constitutional inhibition.

[6] ID.—POWER TO RESTRICT CHOICE OF CANDIDATES.—It is not within the power of the legislature to restrict electors in their choice of candidates or prohibit them from voting for persons whose names are not printed on the ballots.

[7] ID.—CONSTRUCTION OF STATUTES TO UPHOLD VALIDITY.—Where a statute is fairly susceptible of a construction that makes it harmonize with the constitution and comport with the legitimate powers of the legislature, that is the construction which it should receive.

[8] ID.—DISFRANCHISEMENT OF VOTERS—CONSTRUCTION OF STATUTES TO PREVENT.—A construction of an election law that will permit the virtual disfranchisement of any qualified voter should never be adopted if the statute be fairly susceptible of any other meaning.

PROCEEDING in Mandamus to compel a city clerk to provide ballots containing suitable blank spaces wherein electors may write in the names of persons not printed thereon. Peremptory writ issued.

The facts are stated in the opinion of the court.

Walter E. Barry for Petitioners.

H. F. Orr for Respondent.

FINLAYSON, P. J.—This is an original petition for a writ of mandate to compel respondent, as the city clerk of the city of San Buenaventura, to provide for the use of the voters at a recall election, to be held in that city on the twenty-seventh day of this month, official ballots with blank spaces wherein the voter may write the names of persons whose names are not printed on the ballot.

It appears from the petition, to which a general demurrer has been interposed, that, following the filing of a recall

---

6. Who are candidates, note, 12 **Ann. Cas.** 109.

petition, signed by the necessary number of qualified elec-
tors and petitioning for the recall of two of the city trustees,
the city's board of trustees fixed January 27, 1920, as
the date for holding the recall election; that sample ballots
have been provided by respondent; that there is no blank
space on any of the sample ballots wherein the electors
may write in the names of candidates; and that respondent
refuses to provide, for use at the recall election, official
ballots having thereon any such blank space or spaces.
Attached to the petition is one of the sample ballots. From
this sample ballot it appears that there is no name thereon
other than the names of the two incumbent officers sought
to be recalled, and that, by instructions printed on the bal-
lot, the electors are instructed to vote on the question of re-
call by stamping a cross in the voting square after the word
"Yes" or the word "No." There does not appear on the
ballot the name of any person nominated as a candidate to
succeed either of the two incumbents whose removal is to
be voted upon at the recall election. This, we were informed
by counsel at the argument, is because the petitions that were
signed by the requisite number of qualified electors, nomi-
nating candidates for election to succeed the incumbents,
were not filed by respondent, for the reason that, as he
claimed, there were certain fatal defects in a matter of pro-
cedure. (See case No. 3278, *ante*, p. 509, [188 Pac. 278].)

The matter now presented to us involves the question
whether certain provisions of sections 1196 and 1197 of the
Political Code—provisions that require the official ballots
for every election of public officers to have thereon a blank
space or spaces to permit the electors to write in the names
of persons whose names are not printed on the ballot—are
applicable to elections for the recall of elective officers in
incorporated cities and towns held under the act entitled
"An Act to provide for the recall of elective officers of
incorporated cities and towns," approved January 2, 1912.
(Stats. (Ex. Sess.) 1911, p. 128.)

No question relating to remedy or parties is made. Peti-
tioners and respondent both seek a decision on the merits of
the only question presented, namely, the construction of
the act for the recall of city and town elective officers. The
importance of the question would justify a most painstak-
ing examination of the grounds of our conclusion, but the

necessity for a speedy decision, in order to afford a sufficient opportunity to print the ballots before the election on the 27th instant, precludes that mature deliberation which the question deserves—only yesterday was the petition for the writ filed in this court.

The act to provide for the recall of elective officers for incorporated cities and towns and the two Political Code sections in question are *in pari materia*. One statute (the code) deals with the general subject of elections in comprehensive terms; the other (the recall act) deals with but a part of the general subject of elections, but deals with that part in a minute and definite way.

In determining the question with which we are confronted —the proper construction to be placed upon the act for the recall of elective officers of incorporated cities and towns— we are not embarrassed by any possible conflict between the comprehensive scheme for recall elections provided by the constitution itself, where the person sought to be recalled is a state officer, and a general law of the legislature. (See article XXIII of the constitution for the scheme provided thereby for the recall of an elective public officer of the state.) The legislature, by this same article of the constitution, is expressly empowered to enact laws prescribing the procedure for the recall of elective officers of cities and towns. The language of the organic law is: "The recall shall also be exercised by the electors of each county, city and county, city and town of the state, with reference to the elective offices thereof, under such procedure as shall be provided by law." It was pursuant to this authorization that the legislature, at its special session held shortly after article XXIII was adopted, passed the act of January 2, 1912, providing for the recall of elective officers of incorporated cities and towns.

The act for the recall of elective city and town officers provides a comprehensive scheme of recall election. As a part of that scheme, the act describes what shall be printed on the recall ballot. It does not, however, expressly declare, as do sections 1196 and 1197 of the Political Code, that the ballots shall be printed with blank spaces to allow the voter to write in names not printed on the ballot. So far as pertinent, the language of the recall act is: "There shall be printed on the recall ballot, as to every officer whose

recall is to be voted on thereat, the following question:
'Shall (name of person against whom the recall petition
is filed) be recalled from the office of (title of the office) ?'
following which question shall be the words 'Yes' and 'No'
on separate lines, with a blank space at the right of each,
in which the voter shall indicate, by stamping a cross (x),
his vote for or against such recall. On such ballots, under
each such question, there shall also be printed the names
of those persons who have been nominated as candidates to
succeed the person recalled, in case he shall be removed
from office by said recall election; but no vote cast shall be
counted for any candidate for said office unless the voter
also voted on said question of the recall of the person sought
to be recalled from said office. The name of the person
against whom the petition is filed shall not appear on the
ballot as a candidate for the office. If a majority of those
voting on said question of the recall of any incumbent from
office shall vote 'No,' said incumbent shall continue in
office. If a majority shall vote 'Yes,' said incumbent shall
thereupon be deemed removed from such office upon the
qualification of his successor. The canvassers shall canvass
all votes for candidates for said office and declare the result
in like manner as in a regular election. If the vote at any
such recall election shall recall the officer, then the candi-
date who has received the highest number of votes for the
office shall be thereby declared elected for the remainder of
the term. In case the person who received the highest num-
ber of votes shall fail to qualify within ten days after re-
ceiving the certificate of election, the office shall be deemed
vacant and shall be filled according to law.''

The code sections, so far as their provisions are pertinent,
read: Section 1196: ''. . . It shall be the duty of the clerk
or secretary of the legislative body of any incorporated
city or town to provide separate ballots for *every* election
for city or town officers in which the electors, or any of the
electors, of such city or town, participate, and to cause to
be printed in such separate ballots the name of every candi-
date whose name has been filed with such clerk or secretary
in the manner provided for by law. All ballots shall be
not to exceed twenty-four inches in length, . . . and below
the printed names of the candidates for each office, the
necessary blank space or spaces to permit an elector to

write in the names of persons whose names are not printed on the ballot.'' (Then follows a provision for a special water-marked paper with a design to be furnished by the secretary of state.) ''. . . at any *special* or separate *local* election, paper marked with the design used at the previous election may be used. Nothing in this code contained shall prevent any voter from writing upon his ballot the name of any person for whom he desires to vote for any office and such vote shall be counted the same as if printed upon the ballot, and marked as voted for.'' Section 1197: ''There shall be provided at each polling-place, at each election at which public officers are voted for, but *one* form of ballot for all the candidates for public office, and every ballot shall contain the names of all the candidates whose nominations for any office specified on the ballot have been duly made and not withdrawn, as provided by law, together with the title of the office, arranged to conform as nearly as practicable to the plan hereinafter set forth. . . . All ballots shall be not to exceed twenty-four inches in length, . . . with proper blank spaces to allow the voter to write in names not printed on the ballot.''

It will be noticed that the code provides that there shall shall be but *one* form of ballot for all candidates for public office (sec. 1197), and that at *every* election for city and town officers the ballot furnished by the city clerk shall contain the ''necessary blank spaces to permit an elector to write in names of persons whose names are not printed on the ballot.'' (Sec. 1196.)

[1]. Though it is the general rule that a special controls a general statute, without regard to their respective dates, still it is not always or necessarily true that a special law entirely excludes from its field of operations the provisions of a general law, where the two can occupy the same domain without any inherent antagonism. [2] We are of the opinion that the recall act of January 2, 1912, and the two sections of the Political Code from which we have quoted, should be read together with a view to giving effect to what we deem to be a consistent legislative policy, namely, to provide that at each and every election held in this state at which a candidate for public office is to be voted for, whether it be a general municipal election or a special municipal election for the recall of an incumbent, none but offi-

cial ballots furnished by the state shall be used, and on each and every ballot there shall be suitable spaces wherein any qualified elector may express his choice by writing in the name of any person, and not be required to choose between the persons whose names may be printed on the ballot as nominees for election. Though the two code sections are a part of the general law that deals with the subject of elections in a general and comprehensive manner, and the act of January 2, 1912, is confined to the special subject of elections for the recall of elective city or town officers, there is no inconsistency between the provisions of the latter act (which, for the sake of distinction, we shall designate as the *special* act or statute) and those provisions of the code sections that we have quoted (which we shall refer to as the *general* act or statute). The two acts are *in pari materia,* and, without creating any inconsistency or repugnancy between the two, the field covered by the special act may likewise be occupied by the general act, in so far as the latter provides that, at every election for city and town officers, the official ballots shall contain "the necessary blank space or spaces to permit an elector to write in the names of persons whose names are not printed on the ballot."

[3] The rule is that all consistent statutes which can stand together, if related to the same subject, shall be construed together, and with reference to the whole system of which they form a part, and shall be harmonized, and effect given to all, if this can consistently be done, so as to make the law consistent in all its parts and uniform in its application and results. (*Lambert* v. *Board of Trustees,* 151 Ky. 725, [Ann. Cas. 1915A, 180, 183, 152 S. W. 802].) [4] Where, as here, it does not clearly appear that the legislature intended to prescribe by the special statute all the rules that should govern recall elections, and where, as here, it does appear that the language of the general statute is so comprehensive that it literally embraces the subject matter of the special statute (sections 1196 and 1197 make express provision for *every* election for city or town officers in which the electors of the city or town participate), the special will not exclude the general statute from the field that it occupies, unless there is a necessary repug-

nancy between the acts. (*Casey* v. *Harned,* 5 Iowa, 1; *Talcott* v. *Commissioners,* 53 Cal. 199.)

The purpose of all rules of construction is to ascertain, if possible, the intention of the legislature. For it is the legislative intent that must control. Respondent's contention amounts to this: Though the special act does not, in so many words, say that no space shall be left on the ballot wherein the elector may write the name of any person who is his choice for the office that may become vacant by the recall of the incumbent, nevertheless, this result must follow from an application of the maxim *expressio unius est exclusio alterius.* [5] This maxim expresses but one of the canons of interpretation. It should not be used as a guide for the construction of a statute when, if adopted, its application would invalidate the very statute sought to be construed, by making it violative of some constitutional inhibition. Only by holding that the general statute (that is, the provision of the Political Code that requires blank spaces to be on the ballots), occupies with the special statute the field covered by the latter, can we avoid invalidating the special act.

The constitution of this state guarantees to every qualified elector the right to vote at *all* elections that may be authorized by law. ''Every native citizen of the United States, every person who shall have acquired the rights of citizenship under or by virtue of the treaty of Queretaro, and every naturalized citizen thereof, who shall have become such ninety days prior to any election, of the age of twenty-one years, who shall have been resident of the state one year next preceding the election, and of the county in which he or she claims his or her vote ninety days, and in the election precinct thirty days, shall be entitled to vote at *all* elections which are now or may hereafter be authorized by law.'' (Const., sec. 1, art. II.)

It is apparent from a reading of the act for the recall of elective city or town officers, that all ballots to be used at recall elections held thereunder are required to be printed and furnished at the public expense, just as at all other elections; and that the use of any ballot other than such as may be furnished by the state is absolutely prohibited. If, therefore, the ballots that are required to be used at a recall election have no blank space wherein the voter may

write the name of a person whose name is not printed on the ballot, the voter must be compelled to vote for the person or persons whose name or names may be printed on the ballot furnished him, or be deprived of the privilege of voting for any person whatever. **[6]** If that is the construction that must be placed upon the act for the recall of elective city and county officers, the statute must be held to be unconstitutional and void; for it is not within the power of the legislature to restrict electors in their choice of candidates or prohibit them from voting for persons whose names are not printed on the ballots. (*Eaton* v. *Brown,* 96 Cal. 371, [31 Am. St. Rep. 225, 17 L. R. A. 697, 31 Pac. 250]; *Britton* v. *Board of Commrs.,* 129 Cal. 337, 342, [51 L. R. A. 115, 61 Pac. 1115]; *Spier* v. *Baker,* 120 Cal. 370, 375, [41 L. R. A. 196, 52 Pac. 659]; *Sanner* v. *Patton,* 155 Ill. 553, [40 N. E. 290]; 15 Cyc. 289; note on pp. 686 et seq., vol. 91, Am. St. Rep.) As was said by Mr. Justice Henshaw in *Britton* v. *Board of Commrs., supra,* speaking with reference to statutes restricting the ballots to those furnished by the state: "But where such laws have been upheld, the right of the voters freely to express their preference has always been preserved, as in this state, by blank spaces wherein he may write the names of the candidates of his choice." (129 Cal. 342, [51 L. R. A. 115, 61 Pac. 1117].)

It is no answer to say that the voter, by filing a nominating petition, may have the name of the nominee of his choice placed upon the ballot. He may not be able to induce the requisite number of electors to join with him in so nominating the candidate of his choice. If the narrow construction of this act that respondent contends for be the only permissible construction, the voter is deprived of his constitutional right of suffrage—deprived of the right of exercising his own choice; and where that right is taken away, there is nothing left worthy to be called the right of suffrage—the boasted free ballot becomes a delusion. To justify a construction that would make such consequences possible, the legislative language should be so clear and unequivocal that it cannot with reason be said that room is left for any other permissible construction.

**[7]** It is a well-recognized canon of interpretation that, where a statute is fairly susceptible of a construction that

makes it harmonize with the constitution and comport with the legitimate powers of the legislature, that is the construction which it should receive. (*Chesebrough* v. *San Francisco,* 153 Cal. 559, 567, 568, [96 Pac. 288].) **[8]** A construction of an election law that will permit the virtual disfranchisement of any qualified voter should never be adopted if the statute be fairly susceptible of any other meaning. (*Bowers* v. *Smith,* 111 Mo. 45, [33 Am. St. Rep. 491, 16 L. R. A. 754, 20 S. W. 101]; *Park* v. *Rives,* 40 Utah, 47, [119 Pac. 1034]; *Eckerson* v. *Des Moines,* 137 Iowa, 452, [115 N. W. 177].)

In the light of the foregoing considerations, we are satisfied that it was the intention of the legislature that the requirement of sections 1196 and 1197 of the Political Code with respect to blank spaces on the ballots, wherein the voter may write the names of the candidates of his choice, should apply to recall elections held under the recall act of January 2, 1912, just as in the case of every other election of public officers.

There is another consideration which impels us to this construction of the act in question. It is this: If the requirement of the code sections relative to blank spaces on the ballots should be held not to be applicable to municipal recall elections, then it would be possible for the act for the recall of elective city and town officers to defeat its own purpose. The purpose of the recall statute is to enable a majority of the voters, voting at any recall election, to remove an unfaithful or undesirable incumbent of any elective office of the city or town. But if, as in the instant case, no nominating petition has been filed nominating a candidate for the office, and if, therefore, no name of such nominee be printed on the ballot, then even though a majority of the voters vote 'Yes' on the question of the incumbent's recall, their purpose must be frustrated if they are not to be permitted to write in the name of any person as their choice for the office. The language of the act is that if a majority of the voters shall vote "Yes" on the question of recall, then "said incumbent shall thereupon be deemed removed from such office *upon the qualification of his successor.*" But if, as in the present case, no candidate's name is printed on the ballot, and if no voter can write in the name of any person as his choice for the office,

then there is no "successor" who can qualify, and, consequently, no vacancy in the office, to be filled by appointment or otherwise. For the act says, in effect, that the incumbent, though a majority vote for his recall, is not for that reason alone deemed to be removed. He is not deemed removed until the "qualification of his successor." This reasoning is in nowise vitiated by the last sentence of the section, which reads: "In case the person who received the highest number of votes shall fail to qualify within ten days after receiving the certificate of election, the office shall be deemed vacant and shall be filled according to law." (Stats. (Ex. Sess.) 1911, p. 130.) This language refers only to a vacancy created by a failure to qualify on the part of a person whose name was printed or written on the ballot, and who received the highest number of votes cast at the election.

For the foregoing reasons we think the demurrer should be overruled and a peremptory writ issued as prayed.

It is so ordered.

Sloane, J., and Thomas, J., concurred.