## STATE v. BOARD OF COUNTY COMMISSIONERS
### (No. 1063; Decided September 10, 1921; 200 Pac. 469)

COUNTIES—ELECTIONS—DESIGNATION OF POLLING PLACES—NOTICE OF SPECIAL ROAD BOND ELECTION.

1. Notice of a special election for the submission of the question of authorizing the county commissioners to issue bonds of the county for the construction of highways, bridges, viaducts and subways under Comp. Stats. 1920, Sec. 1334 as amended by Laws 1921, Chapter 67, need not include a designation of the polling places even though the commissioner's resolution directs it, as such designation is not required by the statute. Comp. Stats. 1920, Section 1336 provides that such special election shall be conducted in so far as practicable in the manner prescribed for general elections, the procedure for which is provided by Comp. Stats. 1920, Sections 2546-2550; 2577, 2579, 2618.

ERROR to the District Court, Sheridan County; HON. JAMES H. BURGESS, Judge.

Proceedings for a writ of prohibition on the relation of Sheridan Investment Company against the Board of County Commissioners in Sheridan County. There was a judgment for defendant and plaintiff brings error.

*Will G. Metz,* for plaintiff in error.

Plaintiff's demurrer to the petition should have been sustained; the notices of special election did not designate the polling places notwithstanding that such designation was required by the resolution of the County Commissioners directing notice of the election. Special elections are governed by the same procedure as general elections except as otherwise directed. Compiled Statutes 1920, Sec. 2552; General election laws. (Comp. Stats. 1920, Secs. 2546-2549) require the designation of polling places. Election notices are regulated by statute. (Hauswirth v. Mueller, (Mont.) 64 Pac. 324.) In the above case the notice was held ineffective for not designating the polling places. (State v.

School District, 38 Pac. 462 and cases cited.) The Missouri case of State v. Gordon relied upon by defendant in error and which follows the Utah case of State v. Salt Lake City, 99 Pac. 225, does not seem to support a sound rule of procedure for the conduct of special elections and it should not be followed in Wyoming.

*Harvey E. Lonabaugh and E. E. Lonabaugh,* for defendant in error.

Election notices are governed by statutory regulations; the Montana case cited by plaintiff in error involves an omission to follow special statutory provisions and does not seem to be in point. It is apparent from the answer that the voters attended the election in numbers equal to the number generally voting and this allegation is of course admitted by the demurrer. No other judgment could have been rendered by the District Court. The case of State v. Mercer County, 137 S. W. 795 which has the support of the apparent weight of authority on the subject, seems to be directly in point. In that case are cited the following: Packwood v. Kittitas County, 55 A. S. R. 875; State v. Salt Lake City, 99 Pac. 255; Moyle v. Board of Commissioners, 178 Pac. 918; State v. Carbon County, 104 Pac. 222; State v. Carbon County, 114 Pac. 522; Manley v. Board of Commissioners, 104 Pac. 1045; Wright v. Flynn, 173 Pac. 421; Leary v. Young, 176 Pac. 36. The judgment should be affirmed.

Blume, Justice.

The petition in the case at bar alleges among other things that on April 6th, 1921, a resolution was duly passed by the board of county commissioners of Sheridan County, Wyoming, to submit to the voters of the said county the question of issuing the bonds of the said county in the sum of $300,000.00 for the purpose of constructing roads, highways, etc., and providing for a proclamation calling said

election; that said proclamation was made calling the election for May 10th, 1921; that pursuant to said call said election was held, and a majority of the votes cast thereat were in favor of the issuance of the said bonds, and that the defendant county will issue, negotiate, sell and dispose of the same unless prohibited from so doing by order of court, and that by so doing, a great burden of taxation will be added to the plaintiff, who is a tax payer of the said county, and who brings this action on behalf of himself and other tax payers of the said county; that said election is void for the reason that the said proclamation calling for the said election wholly failed to designate the place or places in the several election precincts of said county, where the electors should meet and deposit their ballots, and as a result of such failure, a large and substantial number of qualified voters of said county failed to receive notice and did not vote in said election. Plaintiff prays that a writ of prohibition be issued, prohibiting the said county from issuing the said bonds. A copy of the resolution of the said board is attached, which shows the action taken in fixing the date, calling for the election and providing for the notice of the said election. A copy of the proclamation is also attached which reads as follows: "Proclamation. Notice is hereby given that in accordance with an order of the board of county commissioners of Sheridan County, Wyoming, made and entered of record at a regular meeting held by them on April 6th, 1921, a special election of the qualified electors of Sheridan County, Wyoming, will be held in the said county and state on the 10th day of May, A. D. 1921, in the manner prescribed by law to vote upon the following question, to-wit:" etc. Then it sets out the question, and is duly signed by the chairman of the board of the county commissioners and attested by the county clerk of said county. An answer was filed in said action alleging among other things that the said board of county commissioners duly established election districts, election precincts and polling places on July 7th, 1920, of which the voters re-

ceived notification by publication on July 14th, 1920; that the location of the said polling places remained unchanged up to and including May 10th, 1921; that all electors voting at the special election on May 10th, 1921, proceeded to and voted at the polling places so designated, and that no elector was misled or prevented from casting his or her vote as a result of the failure of the proclamation calling said election to state the polling places; that the vote cast at said bond election held on May 10th, 1921, was substantially the same as the vote cast at the last preceding bond election held in said county in May, 1919, and was a normal and usual vote for elections of this character in said county. A demurrer was filed to said answer, which was overruled, and the plaintiff below refusing to proceed further, judgment was entered for defendant below. The action is here on petition in error of plaintiff below to reverse the action of the lower court. The election in question was evidently called in pursuance to section 1334 of the statutes, as amended by chapter 67 of the Session Laws of 1921.

The only point raised in the record and the briefs is that the notice of the election did not state the polling places, and that therefore the election is void. The statute authorizing the election does not in terms state that to be a requisite, and it is a general rule, since elections are matters of statutory regulation, that the notice does not need to contain anything more than the statute requires. (29 C. J. 99; Matter of Hamilton, 41 U. C. Q. B. 293; State ex rel. v. Ross, 160 Mo. App. 682, 143 S. W. 502.) The point therefore, for us to determine is, as to whether it is required by implication that such notice of the polling places be given in the proclamation of election. Time and place, it is said, is of the substance of an election (20 C. J. 101) and hence it is contended that the specific places should be pointed out where the voters may resort in order to deposit their ballots. It is, of course, true, that fair opportunity must be given the voters in order to express their wishes, but that is a matter primarily for the legislature to determine.

It does not at all, in actual experience, follow that because no notice is published of the polling places that the voters will thereby be deprived of an opportunity to vote. Election precincts are ordinarily small. Our law provides for a separate one for every voting population of 400. A large proportion of voters, as we know by actual experience, never inquires and never finds out until the day of election where the polling places are located. No great harm would, ordinarily, result, even if no actual knowledge were conveyed thereof to the voters until election day, or until the actual opening of the polls by the judges. Persons interested in the election and the result thereof will ordinarily easily find the place where they may cast their vote. Hence, where the statute does not specifically provide, as it does not in this instance, that notice of the polling places shall be given in the proclamation of election, we should not, on the theory that the voters must not be deprived of an opportunity to vote, feel constrained to hold that such requirement is made by implication. The statute of course requires reference in the notice to the county where the election is to be held, and where that is done, as it was in this case, the requirement as to place is satisfied. The cases of State ex rel. v. Ross, supra, and State ex rel. v. Gordon, 242 Mo. 615, 147 S. W. 795, are instructive on the points above mentioned. In the first of these cases, the court among other things said:

"As to the time of the election no question is raised, but it is contended that while the statute does not in terms require the order or notice of election to designate the polling places, yet to follow the general rule, that time and place of an election is of its very substance, it is necessary to read into the statute the provision that the order and notice must designate the polling places, because the term "polling place" is synonymous with "place of election." We do not think so. The term place has a great variety of meanings according to the connection in which it is used. * * * In the absence of a statute requiring a different construction

the place referred to means the territory within which the election is to be held and does not mean the polling places. * * * Neither the general election statute nor the local option statute requires notice of the selection of polling places to be given. The Legislature has not seen fit to require such a notice and the common experience of the people has demonstrated that such a notice is not necessary. The election precincts are not usually large and the polling places are easily found and as far as our knowledge goes no man has ever been deprived of his right to vote in either a general election or a local option election by not being able to find the polling place, and such a requirement of the law if enacted would serve no useful purpose at all. The jurisdictional notice in elections of this kind is the notice of the election which gives the date on which the election is to be held, and names the place by naming the county or city in which it is to be held.''

The second case above named voices a like sentiment, adding:

''Either those urging the adoption of the measure submitted or those desiring its defeat, will take such interest in the result of the election that everyone who may desire to vote thereat will have no difficulty in finding the place where he should cast his ballot.''

Bearing in mind the fact that the purpose of a notice as to the location of polling places is information to the voters, but that the law, ordinarily, is satisfied by one method of information, unless otherwise required, it would seem reasonable that no requirement of notice of the location of polling places in the election proclamation should be held necessary, in the absence of specific requirement therefor, where adequate provision for opportunity to vote is otherwise made. The Supreme Court of Alabama goes even further than that. In the case of Wilson v. Pike County, 144 Ala. 397, 39 So. 370, it appears that section 2 of an act of the Legislature provided that notice of a special

election should be given and should among other things specify the places of election. Section 3 of the act provided for managers to conduct the election, and it was held, that inasmuch as the law provided the means whereby the places of voting might become definite, that the special notice provided by section 2 of the act was not necessary. Officers and ample machinery are provided by law to conduct the election involved in the case at bar. In fact the same officers and the same machinery used in the preceding general election are the officers and the machinery in the special election. Section 1336 of the statutes provides that "such special elections shall be conducted, and the results thereof canvassed and certified, in all respects as near as practicable, in the same manner as in general elections, etc." the term "manner of election" is, we believe, broad enough to include the use of polling places; an answer to the question "how the election is conducted" impliedly requires a statement of all that is necessary to be done therein, and that would necessarily include voting places. This, we believe, is what was intended to be held in the case of State ex rel. v. Gordon, supra, where it appears that a special election was held in pursuance of a statute very similar to Section 1336 supra. The court there said:

"All persons are required to take notice of public statutes, and, therefore, the voters of Mercer county were compelled to know that the election to vote court house bonds would be conducted in the same manner and at the same polling places as general elections had theretofore been conducted in said county."

The court had in a previous portion of the opinion held that no notice of polling places was necessary; therefore, in holding that the people of Mercer county were required to take notice that the polling places used in the general election would be those used in the special election, evidently could mean nothing else than that the "manner" of election included the use of the polling places.

Turning then to the general election laws we find that in each year preceding a general election the board of county commissioners must divide the county into election districts and polling precincts. (Sec. 2546 to 2550.) They must also appoint judges of election for each polling precinct, who shall serve for one year and until other judges shall be appointed. (Secs. 2577, 2579.) Provision for filling vacancies are fully made. At primary elections the board of county commissioners fix the voting places (section 2501), although we find no such specific provision made for general elections. Section 2611, which was originally section 112 of Chapter 80 of the Session Laws of 1890 provides that "the sheriff of the county in general and county elections and the city marshall in municipal elections shall provide in each polling place *designated by them,* a sufficient number of places, etc." In the session of 1890-91 the legislature amended section 113 of chapter 80 of the Session laws of 1890 by adding thereto the following: "In all cases where it is practicable to utilize a building already constructed, the county commissioners may use the same, or any school house or other public building; provided, that in the use thereof they can secure a substantial compliance with the law." The section as so amended is now section 2618 of the statutes of 1920. It seems that this amendment authorized the establishment by the county commissioners of polling places at the points designated in the statute, and insofar modified section 112 of the session laws of 1890, but where such places are not so established by the county commissioners, that may then be done by the sheriff. (See Breuninger v. Hill, 277 Mo. 239, 250, 251, 210 S. W. 67.) In any event it appears clearly that ample machinery is provided by law whereby the polling places may be fixed, and these polling places may be used in the special elections, although it is not necessary to do so in all cases, and changes may be made where that may be found to be necessary, inasmuch as the special election shall be conducted "as near as may be" in the manner in which general elec-

tions are conducted. There is no pretense in this case that polling places were not actually established and existing at the time of the special election. In fact the answer alleges, which is admitted by the demurrer, that the voting places designated by the board of county commissioners on July 7th, 1920, were actually used and resorted to by the voters, and that the vote cast was a normal vote for elections of that character in the county. Even in the absence of the allegation aforesaid in the answer we would not change our holding. The officers of the county are presumed to have done their duty, unless the contrary appears, and accordingly it will be presumed that they established the necessary polling places. Section 8923, Cobbey's Ann. St. of Nebraska, provides that the city authorities shall have power to appoint judges and clerks of election and provide for the conduct of elections. A special election by a city having that power was called for the purpose of voting bonds. The notice of election did not provide for the polling places. The court on this point said:

"As to the first contention, that the election notice was insufficient because it did not designate the particular places at which the election was to be held in the different wards, it must be·sufficient to say that there is no averment in the petition that there were 'no regular polling places in the city of Fairbury' before that time designated and established by ordinance or usage, or that there were none such at which elections had been regularly held, and it would seem that the court cannot assume in the absence of such averment that there were no 'regular polling places in the city.'" (Hurd v. Fairbury, 87 Neb. 745, 128, N. W. 638.)

(See also Road Comr's v. Bank (N. C.) 107 S. E. 245.)

Counsel for plaintiff in error further contend that inasmuch as the resolution of the board of county commissioners required the places of voting to be designated, that the notice of election was insufficient, since that requirement was not carried out. But the law is otherwise. (Hamilton v. Detroit, 83 Minn. 119, 85 N. W. 933; State ex rel. v.

Gordon, 217 Mo. 103, 116 S. W. 1099; State ex rel. v. Kansas City, 233 Mo. 162, 134 S. W. 1007; Wilson v. Pike, supra; State ex rel. v. Ross, supra.) In the last case it appears that an ordinance of the city made the same requirement as the resolution in the case at bar, and the same contention as herein was there made, but the court disposes of the question in this manner:

"A further answer to this contention is that the statute providing for local option elections in the cities of 2500 or more also provides what notice shall be given, and it was therefore beyond the power of the city council to require any additional notice in order to hold a legal election."

In the Hamilton case, on a similar question, the Supreme Court of Minnesota says:

"The only statutory requirement on this subject is that the notice must be either posted or published. If it be either published or posted, the statutes are complied with. The municipal authorities had no power or authority in this instance to modify or change the statutes on this subject, by requiring, by resolution or otherwise, any additional notice to be given."

All that was necessary in this case was to substantially comply with the statutory requirements. (15 C. J. 619, 620.) We do not find anything in the record that would lead us to think that this was not done. The judgment of the district court is accordingly affirmed.

                                        *Affirmed.*

POTTER, Chief Justice, and KIMBALL, Justice, concur.