[Civ. No. 4145.  Second Appellate District, Division Two.—March 17, 1923.]

## IMPERIAL COUNTY, Petitioner, v. W. D. GAREY, Auditor, etc., Respondent.

[1] STATUTORY CONSTRUCTION — GENERAL AND SPECIAL PROVISIONS.— Where there are two provisions in a statute, one of which is general, and designed to apply to cases generally, and the other particular, relating to only one subject, the particular provision will, as a general rule, prevail and will be treated as an exception to the general provision.

[2] ELECTIONS—SPECIAL COUNTY BOND ELECTION—NOTICE.—The special provision contained in section 4088 of the Political Code with reference to the giving of notice of county bond elections constitutes an exception to the general provisions contained in section 1056 and in subdivision f of section 1142 of that code, and compliance with such special provision is all that is required.

[3] ID.—POSTING NOTICE—NONCOMPLIANCE WITH ORDER OF BOARD.— Where notice of a county bond election is published as required by the provision of section 4088 of the Political Code, the failure to also post notice thereof will not invalidate the election, notwithstanding the board of supervisors in calling the election ordered that the notice not only be published but that it be posted at each polling place ten days before the election.

APPLICATION for a Writ of Mandate to compel a County Auditor to attest certain bonds. Peremptory writ issued.

The facts are stated in the opinion of the court.

E. R. Simon and Chas. E. Scott for Petitioner.

O'Melveny, Millikin, Tuller & Macneil and Paul E. Schwab for Respondent.

Hickcox, Crenshaw & Trude, as *Amici Curiae.*

FINLAYSON, P. J.—This is an original application for a writ of mandate to compel the auditor of Imperial County to attest certain county bonds the issuance whereof had been authorized by the electors of the county voting at a special election called for that purpose by the board of supervisors. Respondent bases his refusal to attest the bonds upon the ground that the election was not properly noticed.

The election was held under section 4088 of the Political Code. It is conceded that the notice which is specifically defined in that section was given. But it is claimed by respondent that the provisions of other sections of the Political Code respecting notice are equally applicable to such special bond elections, and that the notices provided for by such other sections should have been given. To be more specific, it is claimed that in addition to the notice which is specifically prescribed by section 4088 there also should

have been given the notices defined in section 1056 and in subdivision f of section 1142 of the Political Code.

Section 4088 is found in part IV of the Political Code, the provisions whereof relate exclusively to the government of counties, cities, and towns. The article in which this particular section occurs (art. XIII) is entitled "Issuance of Bonds," and deals exclusively with the issuance of county bonds. In so far, at least, as notice is concerned, section 4088 provides a complete and comprehensive scheme for calling county bond elections. It reads in part as follows: "Any county . . . may incur . . . a bonded indebtedness for any purposes for which the board of supervisors are authorized to expend the funds of said county. . . . Such indebtedness shall be . . . incurred in the following manner, to-wit: The board of supervisors thereof shall by order specify the purpose for which the indebtedness is to be incurred, the amount of bonds which they propose to issue . . . and shall further provide for submitting the question of the issuance of said bonds to the qualified electors of the county at the next general election, or at a special election to be called by the board for that purpose. . . . If a special election is called, none but qualified voters of the county shall be permitted to vote thereat, and it shall be held as nearly as practicable in conformity with the general election law of the state. . . . Notice shall be given of such election by publication in one or more newspapers published in the county, once a week for at least four weeks, or daily for not less than thirty days, prior to said election. If there be no such newspaper, then by posting the same conspicuously in five public places in said county at least thirty days before said election. Such notice must contain the time and place or places of holding such election, the names of election officers to conduct the same, the amount and denomination of the bonds, the rate of interest to be paid, the number of years, not exceeding forty, the whole or any part of such bonds are to run. . . . If two-thirds of the electors of the county voting at such election shall vote in favor of issuing such bonds, the board must proceed to issue the amount of bonds specified."

Sections 1056 and 1142 are found in title II of part III of the Political Code. That title contains the general pro-

visions relating to elections. It deals with elections generally.

Section 1142 forms part of a chapter which is headed "Boards of Election." The section deals with the appointment of election officers. Subdivision f of the section (as added by Stats. 1921, p. 875, sec. 1), after providing that the county clerk or registrar of voters shall mail or deliver a notice of appointment to each person whom the board of supervisors has appointed to act as an election officer, reads: "He [the county clerk or registrar of voters] shall also publish the names of the election officers appointed and polling places designated for each election precinct in some daily newspaper published in the county or city and county where the election is to be held, for three successive issues, the last publication to be at least one week before the day such election is to be held."

Section 1056 is found in an article entitled "Election Proclamations." The sections constituting the article are numbered 1053 to 1056, inclusive. Section 1053 provides for the issuance by the Governor of an election proclamation before every general election and also whenever he orders a special election to fill a vacancy in the office of state senator or member of the assembly. Subdivision 1 of section 1054 provides that the Governor's proclamation must contain "a statement of the time of election, and of the offices to be filled." Section 1055 provides for the publication and posting by the several boards of supervisors of the Governor's election proclamation. It is required "to be published in some newspaper printed in the county, if any, and to be posted at each place of election at least ten days before the election, and in case of special elections to fill a vacancy in the office of state senator or member of the assembly, the board of supervisors, upon receipt of such proclamation, may, in their discretion, cause a copy of the same to be published or posted as hereinbefore provided, except that such publication or posting need not be for a longer period than five days before such election." Section 1056 reads: "Whenever a special election is ordered by the board of supervisors, they must issue an election proclamation, containing the statement provided for in subdivision one of section ten hundred and fifty-four, and must publish

and post it in the same manner as proclamations issued by the Governor.''

We shall first consider respondent's claim that notice should have been given by the county clerk in conformity with subdivision f of section 1142.

It will be recalled that section 4088 declares that the notice prescribed by it shall contain ''the time and place or places of holding such [bond] election'' and the ''names of election officers to conduct the same.'' So far, therefore, as the *contents* of the notice are concerned, subdivision f of section 1142 does not differ substantially from section 4088—the former simply declaring that the notice required by it shall contain ''the names of the election officers appointed and polling places designated for each election precinct,'' which is substantially what is required to be set forth in the notice described by section 4088.

Section 4088 does not say that if a special bond election is had it shall be ''called'' in conformity with the general election law. The language is: '' . . . and it [a special bond election] shall be *held* as nearly as practicable in conformity with the general election law of the state.'' There is an obvious distinction between calling an election, including the giving of notice thereof, and holding an election. This distinction is recognized throughout the code. Section 1133, for example, declares that the board or body charged with the conduct of any of the elections mentioned in section 1044 may precinct the territory within which such election ''is to be held.'' The use of the phrase ''is to be held'' (the future tense) clearly indicates that the holding of an election embraces acts which follow the calling of the election—that the holding of an election embraces such acts as, for example, the opening of the polls on the election day, the casting of the ballots, the challenging of voters, the canvassing of the vote, etc.

There is nothing in section 1044 which tends to indicate that it was the legislative intention that the notice of election should be deemed to be a part of the holding of an election. That section, after referring specifically to certain elections, declares that ''all other special elections, including all special elections to vote upon or for or against any proposition or question authorized to be submitted to a vote, shall be conducted under the provisions of sections 1044,

1120, 1121, 1133 and 1151 of this code." It is true that two of the sections to which reference is thus made, sections 1133 and 1151, do provide for acts which necessarily must precede the actual holding of the election—section 1133 providing for the precincting of the territory within which the special election is to be held and section 1151 providing for the appointment of the persons who are to serve upon the election boards. But section 1044 makes no reference to the subject of notice, either directly or indirectly. It is only to the extent that the specifically referred to sections— sections 1120, 1121, 1133, and 1151—deal with matters which in point of time precede the opening of the polls on the election day that section 1044 can be deemed to prescribe duties which are to be performed in connection with a county bond election prior to the actual holding of the election.

For these reasons we conclude that, with respect to the matter of notice, there is nothing in the language of either section 4088 or section 1044 which in and of itself warrants the inference that any of the sections which deal with the subject of elections generally are applicable.

It only remains to consider whether the county authorities must give the notices prescribed by those sections which relate generally to the subject of elections, notwithstanding section 4088 does not of itself make such other sections applicable to county bond elections.

[1] It is a well-established canon of construction that where there are two provisions in a statute, one of which is general, and designed to apply to cases generally, and the other particular, relating to only one subject, the particular provision will, as a general rule, prevail and will be treated as an exception to the general provision. In *Felt* v. *Felt*, 19 Wis. 193, the court states the rule thus: "But it is a well-settled rule of construction that specific provisions relating to a particular subject must govern, in respect to that subject, as against general provisions in other parts of the law, which might otherwise be broad enough to include it." (See, also, *Talcott* v. *Harbor Commrs.*, 53 Cal. 199; *Trinity County* v. *Mendocino County*, 151 Cal. 284, 285 [90 Pac. 685] ; *Los Angeles* v. *Los Angeles Pacific Co.*, 31 Cal. App. 108, 109 [159 Pac. 992] ; *In re Rouse*, 91 Fed. 96 [33 C. C. A. 356] ; *Gardner* v. *School District*, 34 Okl. 716

[126 Pac. 1018] ; *Hawkins* v. *Bare,* 63 W. Va. 431 [60 S. E. 391] ; *Dahnke* v. *People,* 168 Ill. 102 [39 L. R. A. 197, 48 N. E. 137] ; *Stockett* v. *Bird,* 18 Md. 484, and *Rodgers* v. *United States,* 185 U. S. 83 [46 L. Ed. 816, 22 Sup. Ct. Rep. 582, see, also, Rose's U. S. Notes].) [2] According to this canon of construction the special provision contained in section 4088 with reference to the giving of notice of county bond elections must be held to constitute an exception to the general provision contained in subdivision f of section 1142.

What we have said regarding the inapplicability of subdivision f of section 1142 is equally true of section 1056. That section, by its express reference to subdivision one of section 1054, requires the publication and posting of an election proclamation which shall set forth "a statement of the time of election *and of the offices to be filled."* Assuming, for the purpose of this decision only, that the form of proclamation thus defined may be made to fit the case of a special county bond election, still the fact remains that section 1056 is general in its terms and is designed to apply to special elections in a general way. Section 4088, on the other hand, relates to one specific subject—the issuance of county bonds; and with respect to the matter of notice it provides such a complete and comprehensive procedure that it is evident that it was intended to be the exclusive expression of the legislative will upon the subject of notice.

There is no conflict between the foregoing views and what was said in *Cohn* v. *Isensee,* 45 Cal. App. 531 [188 Pac. 279]. There the court was impelled to place upon the statute in question a construction which would harmonize it with the constitution, and it did not clearly appear in that case that the legislature intended to prescribe by the special statute all the rules which would govern. In the present case it does appear that it must have been the intention to make the section which deals specifically with the subject of county bond elections, section 4088, a full and complete expression of the legislative will concerning the matter of notice.

Subdivision f of section 1142 requires publication only—not posting. So, also, section 4088 requires publication, and not posting, in all cases where there is a daily or weekly newspaper published in the county. If publication were made pursuant to the terms of each of these two sections

there would be substantially a duplication of notice, notwithstanding the difference in the time or period of publication prescribed by the two sections respectively. We would be loath to lay at the door of the legislature the absurdity of requiring such an unnecessary recurrence of duplicate notices. Section 1056 requires both posting and publishing. Section 4088 dispenses with posting in all cases where there is a newspaper published in the county. There is in this respect an inherent antagonism between the two sections. *Cohn* v. *Isensee, supra,* expressly recognizes that where there is such antagonism between the general and the special law the latter operates exclusively upon the subject with which it deals.

[3] In calling the election the board of supervisors ordered that the notice not only be published but that it be posted at each polling place at least ten days before the election. Though the notice was published as ordered by the board and as prescribed by section 4088, it was not posted. Wherefore, notwithstanding section 4088 does not make posting a necessary prerequisite where there is a newspaper in which publication may be made, it is contended by respondent that the board's order had all of the effect of a statute, and that a strict compliance therewith was essential. Without doubt an order of the board which is made pursuant to the authorization of a statute has all of the sanction and effect of a direct statutory enactment (*Murphy* v. *San Luis Obispo,* 119 Cal. 624 [39 L. R. A. 444, 51 Pac. 1085]; *San Luis Obispo* v. *Fitzgerald,* 126 Cal. 279 [58 Pac. 699]; *Inglewood* v. *Kew,* 21 Cal. App. 611 [132 Pac. 780]); but that is not this case. Here the notice was given in strict conformity with the specific requirements of section 4088 of the Political Code, and that, as we have seen, is the only notice which the statute demands. The board of supervisors is without power or authority to add to or take from the statutory requirement. The notice prescribed by the legislature is jurisdictional, and the board of supervisors is powerless to add aught to the jurisdictional requirements which the legislature has seen fit to provide. (*Hamilton* v. *Detroit,* 83 Minn. 119 [85 N. W. 933]; *State* v. *Gordon,* 217 Mo. 103 [116 S. W. 1099]; *State* v. *Ross,* 160 Mo. App. 682 [143 S. W. 502]; *State* v. *Commissioners,* 28 Wyo. 30 [200 Pac. 469].) Respondent places much reliance upon

*Thrasher* v. *Kirksville* (Mo.), 204 S. W. 804. That case is clearly distinguishable from this. There it was held, in effect, that the power of a city to make a contract, if the grant of power be silent as to the precise manner in which the power shall be exercised, carries with it the implied authority, at the discretion of the body exercising it, to call for bids and to let the contract to the lowest and best bidder. In the instant case the statute, which is specific as to the kind of notice to be given, leaves no room for the discretionary exercise of any power beyond that specifically delegated by the statute.

The demurrer interposed by respondent to the petition is overruled, and it is ordered that the peremptory writ of mandate issue as prayed.

Works, J., and Craig, J., concurred.